IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-354-FL

| | |
|---|---|
| DOUG PAUL and ALEXANDER BEKO, on behalf of themselves and all others similarly situated,[1] <br><br> Plaintiffs, <br><br> v. <br><br> BLUE CROSS BLUE SHIELD OF NORTH CAROLINA, <br><br> Defendant. | ORDER |

This matter is before the court on defendant's motions to dismiss and to strike, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7) and 12(f) (DE 12). The motion has been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the motion is denied.

### STATEMENT OF THE CASE

Plaintiffs commenced this putative class action July 27, 2023, arising out of defendant's denial of coverage for plaintiffs' claims for medical treatment under their group healthcare plans and defendant's policy. Plaintiffs assert claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), (first claim for relief); and § 1132(a)(3) and

---

[1] The clerk is DIRECTED to change the plaintiffs' designations in the court's docket consistent with the caption of this order, which also is based upon the designation of plaintiffs as set forth in the complaint, such that both plaintiff Doug Paul and Alexander Beko are suing "on behalf of themselves and all others similarly situated." (Compl. (DE 1) at 1).

(g) (second claim for relief); for breach of contract[2] (third claim for relief); for breach of fiduciary duty, (fourth claim for relief); and under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1.1 and 58-63-15, (fifth claim for relief). Plaintiffs bring the action on behalf of themselves and all putative class members who have also been denied coverage for the same type of medical treatment under that policy.[3] Plaintiffs seek damages, individually and for the putative class, to recover benefits due to them under the terms of their plans, and injunctive, declaratory, and other equitable relief along with attorneys' fees.

Defendant filed the instant motion to dismiss and to strike, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.[4] Plaintiffs responded in opposition thereafter, relying on a notice of final adverse benefit determination, and defendant replied.

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff Doug Paul ("Paul") is a participant in an employee group health benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), (compl. ¶ 4), and plaintiff Alexander Beko ("Beko") is a participant in North Carolina's State Health Plan for Teachers and State Employees ("state

---

[2] The court construes plaintiffs' third claim captioned as a claim "for denial of benefits" as a claim for breach of contract where it references a breach of "contractual obligations," (compl. ¶ 159), and "breach of contract." (id. ¶ 161).

[3] A case presenting similar issues recently came before this court. See Greenwell v. Group Health Plan for Employees of Sensus USA Inc. et al, No. 5:19-cv-577-FL (hereinafter the "Greenwell case"). There, a prostate cancer patient brought a putative class action claiming that the instant defendant's denial of PBRT, the therapy at issue in this case, as investigational and not medically necessary violated ERISA. The parties entered stipulation of dismissal June 20, 2023, and the case was closed June 27, 2023.

[4] Although defendant states in the instant motion that it "requests that the Court dismiss Plaintiffs' Complaint in its entirety," (Def's Mot. (DE 12) at 2), defendant does not raise any arguments in its motion or memorandum in support thereof for dismissal of plaintiff Paul's individual claim under 29 U.S.C. § 1132(a)(1)(b). Accordingly, the motion is, in effect, a partial motion to dismiss.

2

plan"). (id. ¶ 7). Both plans are administered by defendant Blue Cross Blue Shield of North Carolina. (Id. ¶¶ 5, 7). Both men were diagnosed with prostate cancer (id. ¶¶ 59, 80), and both men's physicians recommended proton beam radiation therapy ("PBRT"). (id. 60-61, 81, 87). According to the complaint, PBRT is a "highly effective" form of radiation therapy which allows high doses of radiation to be delivered to a tumor while minimizing damage to surrounding tissue. (Id. 13-16).

Both men "requested benefits" from defendant, (id. ¶¶ 61, 82), but coverage was denied on the grounds that according to defendant's "corporate medical policies," PBRT is considered investigational when used to treat prostate cancer. (Id. ¶¶ 62-63, 82-83). Plaintiff Paul "requested a second level appeal," through defendant (id. ¶ 64), plaintiff Beko underwent both a first and second appeal through defendant, (id. ¶¶ 84-91), and both sought external review by third parties, (Id. ¶¶ 66-67, 92-94), but coverage was denied each time.

**COURT'S DISCUSSION**

Defendant seeks to dismiss all plaintiff Beko's claims for failure to join the state plan, an assertedly necessary and indispensable party under Federal Rule of Civil Procedure 19, and for failure to state a claim upon which relief may be granted with respect to his UDTPA claim. Defendant also seeks to dismiss those parts of plaintiff Paul's claims arising under 29 U.S.C. § 1132(a)(3) as duplicative of his claim under 29 U.S.C. § 1132(a)(1)(b). Finally, defendant seeks to strike all "class claims" on the grounds that the complaint establishes that a class action cannot be maintained, and in the alternative, to dismiss "any putative class members whose claims are time-barred and who were encompassed within the proposed class in" the Greenwell matter. (Def's Mot. (DE 12) at 1). The court addresses each part of the motion in turn.

3

A.  Failure to Join a Party Under Rule 19

Defendant argues that the state plan is a necessary and indispensable party under Federal Rule of Civil Procedure 19, whose inability to be joined to this action on the basis of state sovereign immunity must result in the dismissal of plaintiff Beko's claims. The court agrees that the state plan is a necessary party, but holds that joinder is feasible where North Carolina's waiver of sovereign immunity with respect to contracts may allow it to participate in this litigation.

1.  Standard of Review

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal of an action where a litigant fails to join a party as required under Rule 19. Rule 19 "sets forth a two-step inquiry for a district court to determine whether a party should be joined in an action." National Union Fire Inc. Co. of Pittsburgh, PA, v. Rite Aid of South Carolina, Inc., 210 F.3d 246, 249 (4th Cir. 2000).[5] First, the court determines whether the party is "necessary" under Rule 19(a), and "if feasible," the court must order the party to be joined.[6] Fed. R. Civ. P. 19(a). If the party cannot be joined, and the party is "indispensable" under Rule 19(b),[7] meaning the action cannot proceed without the

---

[5] Internal quotation marks and citations are omitted unless otherwise specified.

[6] Rule 19(a) provides in relevant part:
(1) A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
    (A) in that person's absence, the court cannot accord complete relief among existing parties; or
    (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
        (i) as a practical matter impair or impede the person's ability to protect the interest; or
        (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

[7] Rule 19(b) provides:
If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
    (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
    (2) the extent to which any prejudice could be lessened or avoided by:
        (A) protective provisions in the judgment;

4

party's presence, dismissal is appropriate. Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 917–18 (4th Cir.1999). However, dismissal is "a drastic remedy" to be "employed ... sparingly," id. at 918, and the decision must be made "pragmatically, in the context of the substance of each case, rather than by procedural formula." Id.

2. Analysis

   a. The State Plan is a Necessary Party

Defendant argues that the state plan is a necessary party under Rule 19(1)(a). The court agrees.

A party "shall be joined if feasible where [its] absence precludes complete relief among those already parties." United States v. Arlington County, Va., 669 F.2d 925, 929 (4th Cir. 1982). "Complete relief refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." Id.; cf. Key Constructors Inc. v. Harnett County, 315 F.R.D. 179, 184 (E.D.N.C. 2016) (denying motion to dismiss for failure to join a necessary and indispensable party and finding that the court could provide complete relief where all parties against whom monetary damages were sought had already been joined in the action).

Here, the "court cannot accord complete relief among [the] existing parties," where plaintiff Beko requests relief that is not within defendant's power to bestow. Fed. R. Civ. Proc. 19(a)(1)(A). Plaintiffs prayers for relief include "[p]ayment of health benefits due to" plaintiff Beko, (compl. ¶ 206(h)), but defendant only "serves as claims administrator for the [s]tate [p]lan." (Compl. ¶ 44). According to the complaint, "the plan sponsor or employer," here the state plan, a

---

(B) shaping the relief; or
(C) other measures;
(3) whether a judgment rendered in the person's absence would be adequate; and

5

division of the Department of the State Treasurer, "is responsible for providing the funding for" defendant to issue payments. (Id.). It is not clear how defendant could pay for health benefits without funding from the state plan, the party against whom this relief ultimately is sought. The complaint alleges that payments are "issued out of bank accounts that [defendant] controls" (compl. ¶ 45) and that defendant "is fully responsible for processing the health claims and making the determination whether to issue the payment from its account." (Id. ¶ 46). The structure of the payment mechanism, however, does not alter the fact that plaintiff seeks money from a party he has not sued. Accordingly, the court finds that the state plan is a necessary party under Rule 19(a)(1)(A).[8]

      b.    Joinder is Feasible

Defendant argues that where the state plan enjoys sovereign immunity, joinder is not feasible, and the case must be dismissed. The court disagrees.

"[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) ("[F]ederal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States."). As a limitation on the grant of judicial authority in Art. III, sovereign immunity "demands a withdrawal of jurisdiction" that effectively confers on states an immunity from suit in federal courts by private parties absent consent given. Suarez Corp. Indus. v. McGraw, 125 F.3d 222, 227 (4th Cir. 1997); see Employees of Dep't of Pub. Health & Welfare, Missouri v. Dep't of Pub. Health & Welfare, Missouri, 411

---

[8] Defendant suggests, in addition, that the state plan is a necessary party under Rule 19(a)(1)(B). (See, e.g., Def's Memo (DE 14) at 20) ("Beko's allegations cannot be resolved without consideration of the state plan's rights and obligations vis-à-vis Beko."). The court rejects this suggestion where the complaint alleges that the state plan has already delegated all authority for making benefit determinations to defendant, (see compl. ¶ 45), and defendant has not offered any specific risk of conflicting legal obligations. See Teamsters Local Union No. 171, 173 F.3d at 918-19 (providing examples of both).

6

U.S. 279, 280 (1973).  Sovereign immunity extends to state agencies and officials properly considered "an arm of the state."  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977).

State sovereign immunity may be abrogated in two limited circumstances: 1) a state may unequivocally express its consent to be sued in federal court, or 2) with an unequivocal expression of intent, Congress may abrogate sovereign immunity with a valid exercise of its powers.  See Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 55 (1996); Fitzpatrick v. Bitzer, 427 U.S. 445, 457 (1976); Edelman v. Jordan, 415 U.S. 651, 673 (1974); Passaro v. Virginia, 935 F.3d 243, 247 (4th Cir. 2019).  The first circumstance here is relevant.

As a general rule, "whenever the State of North Carolina . . . enters into a valid contract, the [s]tate implicitly consents to be sued for damages . . . in the event it breaches the contract." Smith v. State, 289 N.C. 303, 320 (1976).  The North Carolina Supreme Court has twice confirmed that this general rule applies to suits in contract against the state in the context of healthcare plans and reimbursement for medical expenses.  See Lake v. State Health Plan for Teachers and State Employees, 380 N.C. 502, 507 (2022); Abrons Family Practice and Urgent Care, P.A. v. North Carolina Dept. of Health and Human Servs., 370 N.C. 443, 446 (2018) (holding in the context of a breach of contract suit that a state agency's failure to pay Medicaid reimbursements was "subject to judicial review . . . after plaintiffs had exhausted their available administrative remedies.").

Based on the allegations in the complaint, the state has not altered the general rule of waiver of sovereign immunity with regard to the state plan.  First, the benefit booklet references the state plan's "contractual obligation to provide benefits to members for covered services," creating a

7

plausible inference that the state entered into a contract with plaintiff Beko. (DE 1-2 at 73).[9] In addition, the benefit booklet provides:

> All disputes arising from the provision of health benefits or the administration of the State Health Plan Shall be determined under, governed by, and construed in accordance with the laws of the State of North Carolina . . . [.] Any court proceeding related to the provision of benefits or administration of the State Health Plan shall be exclusively brought and exclusively maintained in the state courts located in the State of North Carolina, Wake County, the federal courts located in the Eastern District of North Carolina if jurisdiction is proper in federal court[.] Member expressly submits and consents to the exclusive jurisdiction and exclusive venue therein[;]

(DE 1-2 at 72-73), and

> No legal action may be brought to recover benefits until [the patient has] exhausted all administrative remedies, which requires completion of the two-level appeals process.

(DE 1-1 at 78). By specifically contemplating that legal action may be brought, and specifying the forums in which litigation should take place, the benefit booklet confirms North Carolina's "consent[] to be sued for damages . . . in the event it breaches [a] contract." Smith, 289 N.C. at 320.

State statute confirms that sovereign immunity remains waived, though it is conditioned on a beneficiary's exhaustion of administrative remedies. State law provides for external review of denials of coverage, which the state refers to as "noncertifications." N.C. Gen. Stat. § 58-50-61, (DE 1-2 at 67-71). Highly regulated external review organizations, see N.C. Gen. Stat. §§ 58-50-87, -90, and -94, consider inter alia the patient's medical records, the physician's recommendation, practice guidelines "based on sound clinical evidence," and other documentation. N.C. Gen. Stat. § 58-50-80(i). Once an external reviewer has reached a decision,

---

[9] The court may consider documents attached to the complaint . . . so long as they are integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). Page numbers in citations to documents and briefs in the record specify the page number imposed by the court's electronic filing system rather than the page number showing on the face of the document, if any.

that "decision is binding on the insurer," but the patient may pursue other remedies that may be "available under applicable federal or [s]tate law." N.C. Gen. Stat. § 58-50-84(b).

Defendant argues that plaintiff Beko should bring his claims before the Industrial Commission, relying on Birchard v. Blue Cross and Blue Shield of North Carolina, Inc., in which the North Carolina Court of Appeals found that an insured should have sought review before the North Carolina Industrial Commission. 283 N.C. App. 329, 333 (2022). Birchard is inapposite in three respects. First, it is distinguishable, because the Court of Appeals did not reference the terms of the plan at issue. Id. Here, jurisdiction in the state and federal courts located in North Carolina specifically is provided for by the state plan, while suit before the Industrial Commission is not mentioned.[10] (DE 1-2 at 72-73). Administrative review is referred to as "the two-level appeals process," without reference to the Industrial Commission. (DE 1-1 at 78). Second and more critically, defendant's interpretation of Brichard also ignores the plain language of North Carolina statute. The provision relied upon reads: "[l]iability in tort of the State Health Plan for Teachers and State Employees for noncertification shall be only under this Article," which is to say, before the Industrial Commission, however, plaintiff Beko's claims arise in contract. N.C. Gen. Stat. § 143-291(d) (emphasis added). Third, defendant has not cited, and the court has not found, any case before the Industrial Commission challenging a noncertification decision by the state plan or external reviewer. Where defendant's interpretation of Brichard reads key language out of the statute, the court declines to adopt its interpretation.

---

[10] The plan does reference "a state Industrial Commission" in the course of excluding coverage for "disease, illness, or injury that occurs in the course of employment" and is compensable under worker's compensation laws, confirming the North Carolina Industrial Commission's proper jurisdiction over worker's compensation and tort, but not contract, claims. (DE 1-2 at 51). See also Destiny Winstead, a minor, by and through her Guardian ad litem, Benjamin Eagles, and Her Mother, Natausha Winstead v. Nash-Rocky Mount Board of Education, North Carolina Industrial Commission, I.C. No. TA-24649 (March. 16, 2016) (awarding minor beneficiary's mother a sum calculated in part to "reimburse the State Health Plan for expenses paid")

9

Defendant also maintains that the state plan is a statutory undertaking rather than a contract, relying upon Lake v. State Health Plan for Teachers and State Employees, 380 N.C. 502, 521 (2022),[11] and North Carolina Ass'n of Educators, Inc. v. State, 368 N.C. 777, 786 (2016), arguing that the state is entitled to alter rights granted by statute without incurring liability for breach of contract. While this is true as a general matter, it ignores the specific allegations in the instant case and the actual holdings of the cases cited. First, plaintiff Beko does not assert that he is suing to enforce a right created solely by statute, but rather to enforce the terms of his "health contract." (Compl. ¶ 156). Second, both cases cited by defendant hold that the state can not retroactively rescind by statute the enhanced job security, see North Carolina Ass'n of Educators, 368 N.C. at 790, or premium-free health plans, see Lake, 380 N.C. at 503, that had formed part of employment contracts. Lake is particularly illustrative: there, retired North Carolina state employees successfully challenged the legislature's ability to "enact[] a statute that eliminated" a premium-free health plan that the North Carolina Supreme Court found was that state employees "was an important component of [their] acceptance of and continuation in employment with the State," id. at 523, and to which they retained "a vested right in lifetime enrollment. That court characterized the state's argument that the retirees could not have reasonable reliance interests because the state retained the power to change the "terms of the health insurance plans available to its retirees" as an "absurdity." Id. at 311.

Thus, joinder is feasible with regard to plaintiff Beko's claim for breach of contract under state law. Accordingly, defendant's motion to dismiss all plaintiff Beko's claims for failure to join a necessary and indispensable party is denied. Plaintiffs are directed to file within 14 days of the

---

[11] Defendant cites to the North Carolina Court of Appeals decision reviewed by the case cited above. Lake v. State Health Plan for Teachers and State Employees, 264 N.C. App. 174 (2019) ("Lake 2019"). While the court closely has considered Lake 2019, it relies on the North Carolina Supreme Court decision for the final word on North Carolina state law.

10

date of this order an amended complaint naming the state plan as a defendant as to plaintiff's breach of contract claim and the heading of that claim to reflect the court's construction, and to serve process on it in accordance with Rule 4. For avoidance of doubt, where plaintiffs have not alleged that the state plan acted as a fiduciary or argued that North Carolina may be sued for unfair and deceptive trade practices, the state plan is not to be named as a defendant with respect to plaintiff Beko's claims for breach of fiduciary duty or under N.C. Gen. Stat. §§ 75-1.1 and 58-63-15.

B.  Motion to Dismiss for Failure to State a Claim

Defendant moves to dismiss plaintiff Beko's claim under the UDTPA, plaintiff Paul's claim under 29 U.S.C. § 1132(a)(3), and any time-barred class members' claims, under Rule 12(b)(6). The court treats individual plaintiffs' claims below, and reserves discussion of class members' claims until after address of defendant's motion to strike those claims. (See infra § D).

1.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[12] "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments."

---

[12] Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

2.        Analysis of Plaintiff Beko's UDTPA claim

Defendant argues that no reasonable inference of proximate causation, an element of liability under the UDTPA, may be made where the external reviewer also denied coverage, and defendant was bound by statute to abide by its decision. The court disagrees.

"A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." See Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68 (2000). North Carolina declares as unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). "In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001).

Unfair practices in the insurance industry in North Carolina are governed by North Carolina General Statute § 58-63-15(11), which enumerates certain unfair claim settlement practices. Gray, 352 N.C. at 68. "[T]he acts proscribed in [N.C. Gen. Stat.] § 58–63–15(11) were designed to protect the consuming public" based on the determination that the specified conduct is "inherently unfair, unscrupulous, immoral, and injurious to consumers." Id. at 70-71. In considering the intersection between North Carolina General Statute § 75-1.1 and § 58-63-15(11), the Fourth Circuit has explained as follows:

> North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, prohibits unfair and deceptive acts or practices, generally, and North Carolina's "Unfair Claim Settlement Practices" statute, N.C. Gen. Stat. § 58-63-15(11), defines unfair practices in the settlement of insurance claims. As relevant

here, § 75-1.1 provides a private cause of action for violations, whereas § 58-63-15(11) does not; instead "the remedy for a violation of section 58-63-15 is the filing of a section 75-1.1 claim." Country Club of Johnston Cty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C.App. 231, 563 S.E.2d 269, 278 (2002) (internal quotation marks omitted). Thus, an individual may file an independent § 75-1.1 claim, or may file a § 75-1.1 claim that relies on a violation of § 58-63-15(11). See Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 529 S.E.2d 676, 684 (2000).

Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018). Plaintiff Beko does not specify which subsection of the UDTPA he contends defendant violated, however, the court construes his allegation that defendant "failed to conduct a reasonable investigation into" his claim as arising under § 58-63-15(11)(d).

As a general matter, "proximate cause" is defined as

a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

Hairston v. Alexander Tank and Equipment Co., 310 N.C. 227, 233 (1984). "Foreseeability of injury is thus an essential element of proximate cause[.]" Id. The proximate cause element to a UDTPA claim element requires the plaintiff to prove that the defendant's actions caused actual injury. See, e.g., Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 164–65 (4th Cir. 2012); Pearce v. Am. Defender Life Ins. Co., 316 N.C. 461, 471 (1986).

Here, plaintiff Beko has stated facts sufficient to draw plausible inference that defendant's actions were the proximate cause of his injury. The complaint states that defendant denied him benefits for PBRT, citing its own medical policy and stating that PBRT was "investigational when used to treat prostate cancer . . . or any other tumors not listed in" the policy. (Compl. ¶ 83). The medical policy in turn cited a single source, defendant's own prior assessment that "it has not yet been established whether PB[R]T improves outcomes in any setting for clinically localized

13

prostate cancer." (Id.. ¶ 49). Defendant allegedly relied on the same policy to deny plaintiff Beko's first, (id. ¶ 85), and second, (id. ¶ 93), reviews, using "unqualified medical directors with no experience or training in the context of radiation oncology," (id. ¶ 104), and rendering "boilerplate adverse benefit determinations." (Id.). From this, it is reasonable to infer an external review organization would uphold denial of plaintiff Beko's claim. Accordingly, defendant's motion to dismiss plaintiff's claim under the UDTPA is denied.

Defendant argues in addition that the independent medical reviewer's affirmation of its decision "establishes that [defendant] acted in good faith." (Def's Mem. (DE 14) at 27). However, on a motion to dismiss the court construes the facts alleged in the complaint "in the light most favorable to the plaintiff." Nemet Chevrolet, 591 F.3d at 255. While defendant may ultimately be proved correct, its assertion of good faith is premature at this stage. Accordingly, its motion to dismiss plaintiff Beko's UDTPA claim is denied.

3. Analysis of Plaintiff Paul's Claim Under 29 U.S.C. § 1132(a)(3)

Defendant argues that plaintiffs' claim for equitable relief under 29 U.S.C. § 1132(a)(3) is duplicative of his claim to "recover benefits due to him under the terms of the plan" pursuant to 29 U.S.C. § 1132(a)(1)(B). The court disagrees.

Under 29 U.S.C. § 1132(a)(1)(B), an insured may bring a civil action "to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan." Under § 1132(a)(3), sometimes called the "catchall" provision, Varity Corp. v. Howe, 516 U.S. 489, 512 (1996), an insured may bring a civil action to enjoin certain practices or obtain other equitable relief. The Fourth Circuit recently has held alternative pleading permissible in the ERISA context. Although "a plaintiff who prevails in a claim for benefits under [s]ubsection (a)(1)(B) may not also obtain other relief under [s]ubsection (a)(3) . . . Federal Rule of Civil Procedure 8(a)(3)

specifically permits pleading 'in the alternative,' so nothing . . . prevent[s] plaintiff[s] from suing under both provisions. Hayes v. Prudential Insurance Company of America, 60 F.4th 848, 855 (4th Cir. 2023); see Rose v. PSA Airlines, Inc., 80 F.4th 488, 465 (4th Cir. 2023) (examining whether plaintiff was entitled to relief under § 1132(a)(3) after concluding that relief under § 1132(a)(1)(B) was unavailable). Where the Fourth Circuit has specifically authorized the kind of alternative pleading here engaged in by plaintiffs, both claims may proceed.

Defendant relies primarily on cases that predate and were abrogated by those discussed above. (Def's Mem. (DE 14) at 17).[13] Defendant also states that "this case is unlike Rose," but does not explain the basis for that position. (Def's Reply (DE 22) at 8). The court's own analysis shows that Rose and the case at bar are alike in many ways, including in the diversity of types of relief sought and the request that defendant pay unpaid benefits directly to plaintiffs. Compare (Compl. ¶ 206) (requesting 17 varieties of relief, including "an order requiring [defendant] to create a common fund out of which it will make payment, with interest, of any unpaid benefits to [p]laintiffs and the [m]ember [c]lass") with Rose, 80 F.4th at 496 (characterizing the question presented as "whether the . . . monetary cost of the surgery that [the beneficiary] was wrongfully denied . . . qualifies as 'equitable relief' under the statute).

Finally, although defendant correctly characterizes the relevant portion of Hayes as dicta, this simply means that the passage does not "serve as a source of binding authority." United States v. Pasquantino, 336 F.3d 321, 329 (4th Cir. 2003). The passage is still persuasive authority, particularly where it was cemented in a reported opinion less seven months later. See generally

---

[13] Among these is the court's own order in Greenwell, which was decided without the benefit of recent Fourth Circuit precedent and held that plaintiff could not maintain an action under 29 U.S.C. § 1132(a)(3) where adequate relief was available through 29 U.S.C. § 1132(a)(1)(B). 505 F. Supp. at 606-07.

15

Rose, 80 F.4th at 492. Accordingly, defendant's motion to dismiss plaintiff's claim for equitable relief under 29 U.S.C. § 1132(a)(3) is denied.

C.     Motion to Strike Class Claims

   1.     Standard of Review

Rule 12(f) states that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). However, motions to strike are "generally viewed with disfavor because striking a portion of a pleading is a drastic remedy." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001).

   2.     Analysis

       a.     Rule 23(a)

Defendant moves to strike plaintiff's class claims, arguing that it is clear from the face of the complaint that plaintiffs do not meet the requirements for class certification under Federal Rule of Civil Procedure 23(a). The court disagrees.

Under Federal Rule of Civil Procedure 23(a),

> the party seeking certification must demonstrate, first, that 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.

Walmart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011). The court may strike class claims if "the complaint on its face" shows that plaintiffs will fail to the requirements for class certification. Goodman v. Schlesinger, 584 F.2d 1325, 1332 (4th Cir. 1978). The determination of whether these requirements are met, however, "usually should be predicated on more information than the complaint itself affords." Doctor v. Seaboard Coast Line R. Co., 540 F.2d 699, 707 (4th Cir. 1976).

Defendant argues that the complaint does not contain allegations for the court to "make a reasoned conclusion" as to whether the requirement of numerosity is met where plaintiffs do not allege how many patients diagnosed with prostate cancer sought PBRT, properly filed a claim for benefits, were denied coverage, or exhausted all their administrative remedies. Such issues, however, properly are the subject of class certification discovery. See Gunnells v. Healthplan Services, Inc., 348 F.3d 417, 425-33 (4th Cir. 2003) (upholding a class certification order in a suit against a healthcare plan on the basis of "detailed factual findings" made after some initial discovery).

Nor is it apparent from the face of the complaint that the commonality requirement, which requires that "[t]he common questions . . . be dispositive and over-shadow other issues," is not met. Lienhart v. Dryvit Systems, Inc., 255 F.3d 138, 146 (4th Cir. 2001). Plaintiffs allege in essence that defendant ignored the nuances of each member's medical situation, applying instead a standardized coverage policy. (See, e.g., compl. ¶ 2) ("[defendant] uniformly applied an arbitrary medical policy to deny claims for PBRT[.]"); (id. ¶ 53) ("[defendant] denied [p]laintiffs' claims for PBRT based upon the [defendant's] [m]edical policy."); (id. ¶ 57) ("[defendant] systematically relied upon its internally developed . . . [m]edical [p]olicy to inappropriately justify applying more restrictive coverage guidelines than allowed for under the plain language of the applicable health plans.") In light of these allegations, which the court accepts as true at this stage of the litigation, defendant's contention that commonality is lacking because coverage decisions are made with consideration for each individual patient's unique circumstances falls short. Defendant makes the same argument with regard to typicality, which requires that "a class representative . . . be part of the class and possess the same interest and suffer the same injury as the class members." Lienhart, 255 F.3d at 146. For the reasons already stated, this argument fails.

Finally, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997). There is no conflict of interest showing on the face of the complaint. Defendant argues that plaintiff Paul's claim should as a matter of efficiency be adjudicated before class certification proceeds, but arguments based in efficiency do not meet the high standard for striking matter from pleadings. See Waste Mgmt. Holdings, Inc., 252 F.3d at 347.

      b.     Rule 23(b)

The court also rejects defendant's assertion that plaintiffs cannot show that they are entitled to class certification under Rules 23(b)(1) or 23(b)(2).

Under the relevant portions of Rule 26(b),

a class action may be maintained if Rule 23(a) is satisfied and if:

> 1) prosecuting separate actions by or against individual class members would create a risk of: A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; [or]
>
> 2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]

Fed. R. Civ. P. 23(b). Plaintiffs have not moved for class certification at this time, and are not required to show at this stage of the litigation that such certification is appropriate. See Doctor, 540 F.2d at 707. Defendant identifies no portions of the complaint showing that plaintiffs will fail to meet these requirements, and its predictions regarding the risk of inconsistent adjudication or the consistency of its own conduct are premature in the absence of class certification discovery.

Defendant relies upon Day v. Humana, in which the District Court for the Northern District of Illinois granted defendant insurer's motion to strike class allegations in a case involving denial

18

of claims for cancer treatment. 335 F.R.D. 181 (N.D. Ill. 2020). First, where the United States Court of Appeals for the Fourth Circuit has adopted "a strong policy that cases be decided on the merits," United States v. Shaffer Equipment Co., 11 F.3d 450, 462 (4th Cir. 1993), this court must be cautious in applying the reasoning of out-of-circuit cases striking allegations from pleadings. Second, that case is instructively distinguishable where it involved a fail-safe class, "which is defined so that whether a person qualifies as a member depends on whether the person has a valid claim," sought to include class members suffering from many different types of cancer, and did not plausibly allege that the policy was applied "in a uniform manner to deny PBRT treatment for all putative class members." Day, 335 F.R.D at 200.

      c.     Time Bar

Defendant asks the court to "dismiss any portion of the class claim that includes members who were encompassed within the proposed class" in the Greenwell case dealing with similar subject matter, on the grounds that those claims are time-barred. (See Def's Brief (DE 14) at 15). Depending on the circumstances, a diversity of limitations periods applicable to different class members may preclude class certification, see Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 342 (4th Cir. 1998), or the court may find that the advantages of certification outweigh the challenges of considering different time bar defenses. See Central Wesleyan College v. W.R. Grace & Co., 6 F.3d 177, 189 (4th Cir. 1993). Where the statute of limitations applicable to all members of that putative class is not apparent on the face of the record, and where the court is not now in a position to know the limitations periods to which the Greenwell putative class members were subject, it declines in its discretion to dismiss all such unidentified members of that putative class at this time.

In sum, that part of defendant's motion seeking to strike plaintiff's class claims is denied.

19

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss and to strike (DE 12) is DENIED. Plaintiffs' claims may proceed. Plaintiffs are DIRECTED to file within 14 days of the date of this order an amended complaint naming the state plan as a defendant as to plaintiffs' breach of contract claim and amending the title of that claim to reflect the court's construction, and to serve process on the state plan in accordance with Rule 4.

SO ORDERED, this the 26th day of March, 2024.

LOUISE W. FLANAGAN
United States District Judge