IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-354-FL

| | |
|---|---|
| DOUG PAUL and ALEXANDER BEKO, ) <br> on behalf of themselves and all others ) <br> similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BLUE CROSS BLUE SHIELD OF ) <br> NORTH CAROLINA and NORTH ) <br> CAROLINA STATE HEALTH PLAN FOR ) <br> TEACHERS AND STATE EMPLOYEES, ) <br> ) <br> Defendants. ) | ORDER |

This matter is before the court on defendant North Carolina State Health Plan for Teachers and State Employees' (the "State Plan's") motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (DE 35). The motion has been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the motion is granted. Where the parties' scheduling conference activities have been stayed pending resolution of this and prior pleading challenge, the court also lifts stay and initiates these activities.

**STATEMENT OF THE CASE**

Plaintiffs Doug Paul ("Paul") and Alexander Beko ("Beko") commenced this putative class action against defendant Blue Cross Blue Shield of North Carolina ("Blue Cross") June 27, 2023, arising out of Blue Cross's denial of coverage for plaintiffs' claims for medical treatment under their group healthcare plans and Blue Cross's policy. Plaintiffs assert claims under the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (first claim for relief); and § 1132(a)(3) and (g) (second claim for relief); for breach of contract[1] (third claim for relief); for breach of fiduciary duty, (fourth claim for relief); and under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1.1 and 58-63-15, (fifth claim for relief). Plaintiffs bring the action on behalf of themselves and all putative class members who have also been denied coverage for the same type of medical treatment under that policy. Plaintiffs seek damages, individually and for the putative class, to recover benefits due to them under the terms of their plans, and injunctive, declaratory, and other equitable relief along with attorneys' fees.

Defendant Blue Cross previously moved to strike plaintiffs' class claims and to dismiss for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to join the State Plan as a necessary party. The court, in its March 26, 2024, order (the "March 26, 2024, order"), denied defendant Blue Cross's motion to strike and to dismiss and directed plaintiffs to file "an amended complaint naming the [S]tate [P]lan as a defendant as to plaintiffs' breach of contract claim." (March 26, 2024, Order (DE 23) at 20).

Plaintiffs filed an amended complaint April 3, 2024, renewing their claims against defendant Blue Cross and alleging breach of contract by defendant State Plan as to plaintiff Beko and the putative class.[2] (DE 25 ¶¶ 156-66). Plaintiffs additionally seek "[a]n [o]rder requiring [defendant State Plan] to pay contractual and other related damages as may be proved at trial." (DE 25 ¶ 207(e)).

---

[1] As explained in the court's March 26, 2024, order, the court construes plaintiffs' third claim captioned "for denial of benefits" as a claim for breach of contract where it references a breach of "contractual obligations," and "breach of contract." (March 26, 2024, Order (DE 23) at 2 n.2).

[2] Because plaintiff Paul is not a member of the State Plan, the contract claim involves only plaintiff Beko.

After an extension of time, defendant Blue Cross answered, and defendant State Plan filed the instant motion to dismiss, for lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a claim upon which relief can be granted. Plaintiff Beko responded in opposition, and defendant State Plan replied.

## STATEMENT OF THE FACTS

The facts alleged in the amended complaint may be summarized as follows. Plaintiff Paul is a participant in an employee group health benefit plan governed by ERISA, (am. compl. ¶ 4), and plaintiff Beko is a participant in the State Plan, which is a non-ERISA health benefit plan, (id. ¶ 7). Both plans are administered by defendant Blue Cross. (Id. ¶¶ 5, 7). In this role, defendant Blue Cross controls certain bank accounts and authorizes benefit payments to be issued therefrom. (Id. ¶¶ 46-47). However, the plan sponsor or employer—in plaintiff Beko's case the State Plan—provides the funding for those accounts. (Id. ¶ 45).

Both plaintiffs were diagnosed with prostate cancer (id. ¶¶ 60, 81), and both men's physicians recommended proton beam radiation therapy ("PBRT"), (id. ¶¶ 61-62, 82, 88). According to the complaint, PBRT is an effective form of radiation therapy which allows high doses of radiation to be delivered to a tumor while minimizing damage to surrounding tissue. (Id. ¶¶ 14-17).

Both men "requested benefits" from defendant Blue Cross, (id. ¶¶ 62, 83), but coverage was denied on the grounds that according to Blue Cross's "corporate medical policies," PBRT is considered investigational when used to treat prostate cancer, (id. ¶¶ 63-64, 84). Plaintiff Paul "requested a second level appeal," through defendant Blue Cross (id. ¶ 65), plaintiff Beko underwent both a first and second appeal through defendant Blue Cross, (id. ¶¶ 85-92), and both sought external review by third parties, (id. ¶¶ 67-68, 93-95), but coverage was denied each time.

3

# COURT'S DISCUSSION

Defendant State Plan asserts this court lacks jurisdiction over plaintiff Beko's claims against it because, as an arm of the state, it is immune from suit and because plaintiff Beko lacks standing. Defendant State Plan also asserts plaintiff Beko failed to state a claim against it by failing to plead any specific allegations of wrongdoing by the State Plan. As explained herein, because the court does not have jurisdiction over the claims due to the State Plan's sovereign immunity, the court does not address defendant State Plan's standing and failure to state a claim arguments.

A.  Standard for Waiver of Sovereign Immunity

This court's jurisdiction under Article III is limited by the Eleventh Amendment, which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI; see Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54 (1996). The United States Supreme Court has "held that the Amendment bar[s] a citizen from bringing a suit against his own [s]tate in federal court, even though the express terms of the Amendment do not so provide." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985). However, "a [s]tate can waive that immunity and allow itself to face suit." Global Innovative Concepts, LLC v. Fla. Div. Emergency Mgmt., 105 F.4th 139, 143 (4th Cir. 2024); see also Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 616 (2002) (holding a state's act of removal constituted waiver of immunity).

After this court entered its March 26, 2024, order, the United States Court of Appeals for the Fourth Circuit clarified that "to waive its sovereign immunity in federal court, a [s]tate 'must specify the [s]tate's intention to subject itself to suit in <u>federal court</u>' specifically—no 'general waiver' will suffice." Global Innovative Concepts, 105 F.4th at 143 (emphasis in original)

4

(quoting Atascadero, 473 U.S. at 241).  This is because "[t]he rules governing waiver of federal-law sovereign immunity in federal court come from federal law, not state law." Id. at 144.  Thus, "[s]tates retain their immunity from suit in federal court absent 'express language' or 'overwhelming implication' that a [s]tate intends 'to subject itself to suit in federal court' specifically.'" Id. (emphasis in original) (quoting Atascadero, 473 U.S. at 240-41)).

"The test for determining whether a [s]tate has waived its immunity from federal-court jurisdiction is a stringent one." Atascadero, 473 U.S. at 241.  A state does not "consent to suit in federal court merely by stating its intention to 'sue and be sued,' or even by authorizing suits against it 'in any court of competent jurisdiction.'" Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 676 (1999).  The court must find "a clear declaration by the [s]tate of its waiver . . . to be certain that the [s]tate in fact consents to suit." Id. at 680 (emphasis omitted).  And "in order . . . to constitute a waiver of Eleventh Amendment immunity, [the declaration] must specify the [s]tate's intention to subject itself to suit in federal court." Atascadero, 473 U.S. at 241 (emphasis in original).  The state's language must "leave no room for any other reasonable construction." Id. at 240.

As the court noted in its March 26 2024, order, "whenever the State of North Carolina . . . enters into a valid contract, the [s]tate implicitly consents to be sued for damages . . . in the event it breaches the contract." (March 26, 2024, order (DE 23) at 7) (quoting Smith v. State, 289 N.C. 303, 320 (1976)).  Although the North Carolina Supreme Court has indicated that this general rule applies to state court suits in contract against the state in the context of healthcare plans, see Lake v. State Health Plan for Teachers and State Employees, 380 N.C. 502, 507 (2022), "[t]he rules governing waiver of federal-law sovereign immunity in federal court come from federal law, not state law." Global Innovative Concepts, 105 F.4th at 144.  Any implicit consent to suit via contract

5

is limited to actions in state courts. See id. Thus, the court must apply the "stringent" test enunciated in Atascadero, which mandates "an unequivocal waiver specifically applicable to federal-court jurisdiction." 473 U.S. at 241.

B.  Analysis

Applying the foregoing rules, defendant State Plan, a division of the Department of the State Treasurer, is an "arm of the state" and is therefore entitled to sovereign immunity as guaranteed by the Eleventh Amendment. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977). In its March 26, 2024, order, the court determined that the State Plan is a necessary party to plaintiff Beko's breach of contract claim because by seeking "payment of health benefits due to plaintiff Beko," he makes a claim for "funding from [the State Plan], the party against whom this relief is ultimately sought." (DE 23 at 5-6). At that point, the court further determined that joinder of the State Plan was possible because it waived any claim of "sovereign immunity" by entering into a valid contract with plaintiff Beko.[3] (Id. at 7-8). The court reasoned that, based upon North Carolina law, the state waived sovereign immunity. (Id. at 7).

The sovereign immunity determination in the court's March 26, 2024, order, however, was erroneous in light of the Fourth Circuit's analysis in Global Innovative Concepts. This is because "[t]he rules governing waiver of federal-law sovereign immunity in federal court come from federal law, not state law." Global Innovative Concepts, 105 F.4th at 144.

The relevant language which plaintiff contends operates as the State Plan's waiver of sovereign immunity is contained in the State Health Plan for Teachers and State Employees 70/30 PPO Plan Benefits Booklet ("benefit booklet") under the heading "Applicable Law and Venue":

> All disputes arising from the provision of health benefits or the administration of the State Health Plan Shall be determined under, governed by, and construed in

---

[3]  The court adheres to its prior determination that plaintiffs alleged sufficient facts to "creat[e] a plausible inference that the state entered into a contract with plaintiff Beko." (DE 23 at 7-8).

6

> accordance with the laws of the State of North Carolina . . . [.] Any court proceeding related to the provision of benefits or administration of the State Health Plan shall be exclusively brought and exclusively maintained in the state courts located in the State of North Carolina, Wake County, [or] the federal courts located in the Eastern District of North Carolina if jurisdiction is proper in federal court[.] Member expressly submits and consents to the exclusive jurisdiction and exclusive venue therein[;]

(DE 25-2 at 72-73).

This language contains neither "express language [nor] overwhelming implication that [the State Plan] intends to subject itself to suit in federal court specifically." Global Innovative Concepts, 105 F.4th at 144. Read according to its plain language, this clause merely limits venue to this court "if jurisdiction is proper in federal court." (DE 25-2 at 73). Use of the conjunction "if" indicates that any acceptance by the State Plan of venue in this court is conditional on this court having jurisdiction. This court's jurisdiction is subject to multiple limitations, "[a]nd one of those limitations is that a [s]tate, its agencies, and its officials acting in their official capacities cannot be sued in federal court without their consent." Allen v. Cooper, 895 F.3d 337, 347 (4th Cir. 2018) (emphasis omitted), aff'd, 589 U.S. 248 (2020).

The benefit booklet does not contain a "clear declaration," Coll. Sav. Bank, 527 U.S. 680, that the State Plan intended "to subject itself to suit in federal court," Atascadero, 473 U.S. at 241 (emphasis omitted). Rather, it is a recognition on the part of defendant State Plan and plaintiff Beko that a suit in federal court was a possibility and an agreement between them that if the requirements of federal jurisdiction are met, this court should resolve the dispute. A "reasonable construction," id. at 239, of the language in the benefit booklet is that it is a consent to jurisdiction clause whereby plaintiff Beko waives any challenge to venue or jurisdiction should the State Plan choose to initiate a suit in this court. Thus, this clause, without more, does not constitute a waiver of the State Plan's claim of sovereign immunity in federal court.

7

In sum, sovereign immunity bars plaintiff Beko's claims against defendant State Plan and deprives this court of jurisdiction. Without proof of the State Plan's waiver of sovereign immunity in federal court specifically, this court lacks jurisdiction over any claim against it.

Plaintiff Beko argues that the doctrine of "law of the case" governs and that the court must therefore adhere to the entirety of its March 26, 2024, order. However, "every order short of a final decree is subject to reopening at the discretion of the district judge," Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983), and law of the case doctrine is merely "a means of guiding that discretion," Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003). Additionally, under law of the case a court need not follow its earlier decision when "controlling authority has since made a contrary decision of law applicable to the issue." Id. Where the Fourth Circuit "has since made a contrary decision of law" regarding waiver of sovereign immunity in federal court, this court need not follow that part of its earlier decision. Id.; see Global Innovative Concepts, 105 F.4th at 142-43.

The court thus vacates that part of its prior determination in its March 26, 2024, order holding that "sovereign immunity remains waived" for plaintiff Beko's breach of contract claim. (DE 23 at 8). Accordingly, defendant State Plan's motion must be granted, and plaintiff Beko's breach of contract claim must be dismissed as to defendant State Plan.

## CONCLUSION

Based on the foregoing, defendant State Plan's motion to dismiss (DE 35) is GRANTED as to plaintiff Beko's breach of contract claim against defendant State Plan, and such claim is DISMISSED WITHOUT PREJUDICE. In addition, the court LIFTS stay on the parties' scheduling conference activities. An initial order regarding planning and scheduling will follow.

SO ORDERED, this the 12th day of December, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge